ROSA E. UETZ, Appellant, v. GRACE E. SKINNER, et al., Respondents.

Springfield Court of Appeals, March 16, 1923.

1. **MUNICIPAL CORPORATIONS:** Evidence Held to Show Negligence of One Alighting from Street Car Moving Slowly Without Looking for Automobiles.    Evidence that one alighting from a slowly moving street car at a place where it was not required to let off passengers, took but a few steps when he was struck by an automobile that had been following the street car for about three blocks and was traveling from four to eight miles per hour, and evidence that the automobile could easily have been seen had he looked, *held* sufficient to show contributory negligence, precluding recovery except under the last chance doctrine.

2. ————: Automobile Driver not Required to Anticipate Street Car Passenger Will Alight from Moving Car at Unusual Places.    One driving automobile slowly behind a street car is not required to anticipate that some one would alight from the moving street car at an unusual place, and is not liable for injuries except under the doctrine of last clear chance.

3. **TRIAL: Instruction Held not Erroneous as Assuming Deceased Saw Automobile Before Being Struck.** Where it appears that one struck by an automobile alighted from a moving street car and stepped in front of the automobile, an instruction referring to the automobile as being "then in his view," *held* not erroneous as assuming that he saw it, particularly when under the evidence his failure to see it was contributory negligence precluding recovery for negligence, and the only recovery possible was on the theory of the last clear chance doctrine.

4. ————: **Denial of Requested Instruction Covered by Those Given not Error.** Where an instruction given covers all that was necessary, refusal of a requested instruction is not error.

5. ————: **Denial of Instruction Which Ignores Contributory Negligence Existing as Matter of law, not Error.** Where deceased was struck by an automobile just after alighting from a moving street car, an instruction that, if he alighted on a part of the street commonly used by pedestrians, then he was in a place where he had a right to be, *held* properly denied where under existing conditions he was guilty of contributory negligence as a matter of law for failure to see the automobile.

6. **APPEAL AND ERROR: Instruction Proceeding to Argument and Illustration after Defining Term, Held Properly Denied.** Though a party is entitled to an instruction defining the term "preponderance" used in another instruction if he requests it, but where a requested instruction, after defining the term, proceeds to argument and illustration, it is properly denied.

Appeal from the Circuit Court of Greene County.—
*Hon. Guy D. Kirby,* Judge.

Affirmed.

*Frank B. Williams* and *Talma S. Heffernan* for appellant.

(1) In a civil action, it is the duty of the court, when requested, to define technical terms used in the instructions, and the refusal so to do constitutes reversible error. Johnson v. Mo. Pac., 96 Mo. 340, 349; Thompson v. Ins. Co., 231 S. W. 1049 and 1052, and cases cited; Barry v. Wilson, 64 Mo. 164; Clark v. Kitchin, 52 Mo. 316; McMillen v. Elder, 160 Mo. App.

407; Cramer v. Nelson, 128 Mo. App. 393, 399. The words "preponderance of the evidence" have a peculiar meaning in the law, and it is believed their use, unaccompanied by further explanation, does not convey to the ordinary mind a definite impression. Berger v. Storage Co., 136 Mo. App. 43; Miller v. Boot & Shae Co., 26 Mo. App. 63. (2) The weight and credibility of the testimony of the witnesses testifying as experts are to be determined by the same rules that apply to other witnesses, and such testimony should be considered by the jury in connection with all the other evidence. Dunn v. Dunnaker, 87 Mo. 597; 1 Blashfield on Instructions, sec. 373, pp. 810, 811; Thompson v. Ish, 99 Mo. 160, 179; Hampton v. Massey, 53 Mo. App. 501, 504; Buckalew v. Railroad, 107 Mo. App. 575, 588; Spaulding v. Edina, 122 Mo. App. 65, 69. (3) One may lawfully use that part of a paved street between the street car track and the street curbing as a place in which to alight from a street car, even though the place of alighting is not at a regular stopping place for the discharge of passengers or at a street intersection. The deceased, when he alighted from the street car onto the street paving, was in the exercise of a lawful right in a lawful manner. A pedestrian has a right to cross a street in the middle of the block. Meenach v. Crawford, 187 S. W. 879, 882; Young v. Bacon, 183 S. W. 1081. (4) Inevitable accidents are such as come from a force superior to all human agency, either in their production or resistance. L. C. & L. Ry. Co. v. Hedges, 72 Ky. 645, 647; Dreyer v. People, 58 N. E. 620, 623; Russell v. Fagan, 8 Atl. 258, 261; Bouvier's Law Dictionary (Rawls' Revision), Vol. 1, page 1025. (5) If instructions contradict each other, or are framed on inconsistent, contradictory, or conflicting theories, they are held to be confusing and the error in the one is not cured by the correctness of the other. Bowen v. Epperson, 136 Mo. App. 571; Dunn v. Dunnaker, 87 Mo. 597. (6) Negligence means the doing of something which an ordinarily prudent person would not have done under the same or similar circum-

stances; or the omission to do something which a person of ordinary prudence would have done under the same or similar circumstances. Quirk v. St. Louis United Elevator Company, 126 Mo. 291. (7) The *quantum* of care required of an automobile driver, in the face of peril and under the last chance doctrine, is such care as a man of ordinary prudence and presence of mind would have used under the same circumstances. He is not required to act wisely or discretly but only with such care and judgment as would be expected of a man of ordinary prudence in a like situation. Barry on Automobiles, sec. 114, p. 171, citing Brown v. Atlantic Coast Line, 88 S. E. 332. Even as against a wrongdoer or a trespasser, ordinary care is a primary duty. Starks v. Lusk, 194 Mo. App. 250. The law is satisfied if individuals conduct themselves with the degree of care usually exercised by a person of ordinary prudence. Shamp v. Lambert, 142 Mo. App. 573, citing Mitchell v. Railroad, 132 Mo. App. 143, 153. The test laid down by all the authorities is not: Did the defendant do all he could have done under the circumstances? but: Did the defendant do all that an ordinarily prudent person would have done under the circumstances? (8) The driver on an automobile must take such steps for the safety of pedestrians "as prudence might suggest." McFern v. Gardner, 121 Mo. App. 10, 11; Babbitt on Automobiles, sec. 205, p. 233; Sapp v. Hunter, 115 S. W. 467. (9) Error in an instruction is presumably prejudicial in the absence of a showing that it is harmless. Cottrill v. Krum, 100 Mo. 397; Steinwender v. Creath, 44 Mo. App. 356; Camp v. Wabash R. R., 94 Mo. App. 272. (10) An automobile is, in law, regarded as a highly dangerous piece of machinery. Meenach v. Crawford, 187 S. W. 879, 883, and cases cited. Every person who operates a motor vehicle upon the public highway must be regarded as exercising a privilege and not an unrestricted right. It being a privilege granted by the Legislature, a person enjoying such privilege must take it subject to all proper restrictions. Pickel v. Pickel, 243 Mo. 641. It was the

duty of defendant, Grace B. Skinner, as driver of the automobile, to give warning to a pedestrian apparently unconscious of the approach of her automobile. Guenther v. Railroad, 95 Mo. 299. The driver of an automobile owes to pedestrians the duty of exercising skill and care in the management of his vehicle. Davids on Automobiles, sec. 152, p. 138. (11) Whether or not the defendant, Grace B. Skinner, ought, from the visible facts, to have realized the danger to Uetz when she saw him in the act of alighting from the street car and to have taken such steps as a reasonably prudent person would have taken to avoid the injury, is a jury question. Foster v. West, 194 Mo. App. 94; Starks v. Lusk, 194 Mo. App. 250. (12) An instruction which ignores the duty of the driver of an automobile to prevent the injury so soon as he saw deceased in the street in front of his automobile and in a position of peril, and limits his duty to avoid the injury to the time after deceased had placed himself in danger, is misleading and erroneous. Bunyon v. Citizens' Railway Company, 127 Mo. 12, 13.

*L. L. Collins, Len Walker* and *E. P. Mann* for respondent.

(1) We know of but one exception to the rule that where an injury is the product of the joint concurring acts of negligence of both plaintiff and defendant, the plaintiff cannot recover, and that is an exception made on the ground of public policy and in the interest of humanity to prevent and restrain as far as may be, a willful, reckless or wanton disregard of human life or limb or property, under any circumstances, and that is when the injury was produced by the concurrent negligent act of both plaintiff and defendant, yet if the defendant, before the injury discovered or by the exercise of reasonable care might have discovered the perilous situation in which plaintiff was placed by the concurring negligence of both parties, and neglected to use the means at his command to prevent the injury, then his plea

of plaintiff's contributory negligence shall not avail him. This exception proceeds not upon the theory that the defendant has been guilty of another and independent act of negligence which is the sole cause of the injury and must be charged as a separate and independent cause of action, but upon the ground that the negligence he was then in the very act of perpetrating was characterized by such recklessness, wilfulness or wantonness as that he shall not be heard to say the plaintiff was also guilty of contributory negligence. Judge BRACE in Kelley v. Railroad, 101 Mo. 745; Judge VALLIANT in Morgan v. Railroad, 159 Mo. 275; Judge GANTT, in Blockenbrink v. Railroad, 172 Mo. 689. (2) A showing of a mere possibility that the accident might have been avoided in spite of plaintiff's contributory negligence is not sufficient to invoke the humanitarian doctrine. If the utmost that can be said of plaintiff's evidence is that it tends to show defendant's servant in charge of the car was guilty of some negligence in failing to stop the car after he discovered plaintiff's dangerous proximity to the track, while it shows plaintiff's own negligence conspicuously in not looking for the approaching car, the plaintiff is not entitled to have submitted to the jury the question of whether defendant's servant was guilty of a reckless and wanton disregard of human life in failing to stop the car in time to have avoided the accident after discovering defendant's dangerous proximity thereto, for in such case it cannot be said to a certainty that he was negligent in presuming that plaintiff would exercise prudence and ordinary care to look for the approaching car. Marcovitz v. Railroad, 186 Mo. 350; Deane v. Railroad, 192 Mo. 586-588; Giardena v. Railroad, 185 Mo. 330; Moore v. Railroad, 176 Mo. 544. (3) Granting defendant's negligence in outlook, signals, slacking or stopping, yet where the injured party who is *sui juris,* negligently moves from a place of safety to a place of danger so close before an engine or car that by ordinary care his injury cannot be averted, then there is no room for the play of the humanitarian doctrine, *contra* the

doctrine of concurrent negligence is left to operate as a defense in full play. . . . Self preservation is nature's first law and nature's imposed duty. Every man lives, moves and has his being within that law and duty. He cannot escape therefrom if he would and ought not if he could. Not to obey that law and use one's God-given senses in as primate a duty is tantamount to casting the whole burden of saving one's life or limb on the other party. Why should that be done? We cannot well write the law to be that everyone owes to A the duty of preserving A's life or limb, except A himself. Judge LAMM in Keele v. Railroad, 258 Mo. 78-81, and authorities cited. A person, *sui juris,* approaching a railroad track or crossing at right angles, on foot, at an ordinary gate and in complete control of his own movements is not in the danger zone until he takes the last step or two, and it is uniformly held that an engineer seeing such a person approaching the track on foot in an ordinary walk may act on the presumption the individual will stop before stepping thereon immediately in front of the engine. He has a right to rely in the first instance on such person looking and listening and where looking is seeing and listening is hearing he has a right to presume such person knows the peril and will stop. Keele v. Railroad, supra, 79; State ex rel. v. Reynolds, 214 S. W. 123. If all the evidence of eye-witnesses shows that the injured party in broad daylight walked upon a railroad track at a country crossing before an approaching train without looking or listening when to look was to see and to listen was to hear, the fact is thereby established that the failure to give the statutory signals was not the proximate cause of the injury, but his conduct was negligence and bars a recovery. McGee v. Railroad, 214 Mo. 546-7; Keele v. Railroad, 258 Mo. 78; State ex rel. v. Reynolds, supra; Moore v. Railroad, 176 Mo. 528. (4) While a pedestrian walking in a street is not held to the same degree of care in stopping and looking and listening for approaching automobiles as is imposed upon a traveler at a Railroad crossing in looking out

for approaching trains, yet he is required to exercise reasonable care. It is the duty of a pedestrian traveling in a public street in a city to exercise for his personal safety the faculties with which he is endowed by nature for his protection and is not entitled to walk the streets with closed eye and inattentive mind, and if he fails to do so and is injured by reason of such failure he is guilty of such negligence as would prevent any recovery for the injury sustained. Lowery v. Smith, 199 Mo. App. 170-171 and authorities cited and collated. (5) It is axiomatic in the law of negligence that a casual connection must be established between the injury or loss suffered and the negligence charged. In other words a recovery cannot be had unless it appear that the injury sustained resulted proximately from the negligence complained of and which is the basis of complainant's action and this is true even though the negligence charged be the violation of a municipal ordinance or a statutory provision Kelley v. Railroad, 75 Mo. 138; Warner v. Railroad, 178 Mo. 125; King v. Railroad, 211 Mo. 1; McGee v. Railroad, 214 Mo. 544; Schmidt v. Transit Co., 140 Mo. App. 182; Battles v. Railway, 178 Mo. App. 614; Keele v. Railroad, 258 Mo. 78; Moore v. Railway, 176 Mo. 528. (6) When one has only a brief interval of time in which to act, and acting under the stress of excitement and impending danger, honestly attempts to prevent injury by doing a certain thing, he should not be condemned for failing to do more than he did, and he is not guilty of negligence although he erred in doing what he did. Mathews v. Railway, 156 Mo. App. 715; White v. Railway, 159 Mo. App. 508; Battles v. Railway, 178 Mo. App. 596. (7) Numerous authorities hold that it is not negligence not to take precautionary measures to prevent an injury which if taken would have prevented it, when the injury could not reasonably have been anticipated and would not, unless under exceptional circumstances, have happened. The proper inquiry is not whether the accident might have been avoided, if the one charged with negligence had anticipated its oc-

currence, but whether, taking the circumstances as they then existed, he was negligent is failing to anticipate and provide against it. State ex rel. v. Ellison, 271 Mo. 473. As a general rule a person is not required to look for danger where he has no cause to anticipate danger or when danger does not exist except it be caused by the negligence of another. Crawford v. Stock Yards Co. 215 Mo. 414; State ex rel. v. Ellison, 182 S. W. 965. (8) It is always for the court to decide whether a given state of facts will support a reasonable inference of negligence, and in the instant case we think the indisputable fact that the motorman acted promptly, honestly and with his best judgment in the choice of one of two possible courses, absolves him from any reasonable imputation of a negligent breach of the humanitarian duty towards plaintiff. A man who is honestly and zealously doing his best to save another is not inhuman and should not be denounced as a wrongdoer. Grear v. Harver, 195 Mo. App. 14; Mathews v. Railroad, 156 Mo. App. 715; McGinnis v. Railroad, 190 Mo. App. 534, and same cases in 187 S. W. 165; Battles v. Railroad, 178 Mo. App. 626. Where the evidence of the defendant contradicts that of the plaintiff a question is presented for the jury, not the court, yet where the court is asked to authorize a jury to find a fact from testimony so vague and uncertain that the inference to be drawn from its amounts to scarcely more than conjecture or the possibility that the fact might exist, then the court ought to look at the character of the evidence on the other side and if the case is such that the verdict for plaintiff would necessarily have to be set aside, the court should not submit the question to the jury. Judge VALLIANT in Furber v. Bolt Co., 185 Mo. 311. (9) Where a litigant, as in the instant case, chooses a trial theory and submits his case to the jury on the concession the decedent was negligent, the trial theory abides for appellant purposes. Keele v. Railway, 258 Mo. 75. (10) When a man is dead and there is no evidence as to his conduct at the time of the accident, the law through the necessity of

the case, indulges the presumption of due care. Such presumption, however, is one of fact and not of law and it takes flight upon the appearance of the facts themselves. Therefore the presumption does not obtain when there is any evidence upon the question and the facts are shown by eye-witnesses to the accident. Barge v. Railroad, 244 Mo. 94; State ex rel. v. Reynolds, 214 S. W. 123. (11) It has been uniformly held by our Supreme Court, in the absence of any testimony showing the condition of the party approaching the Railroad crossing that he is unmindful of the approaching danger or that he is in such condition as not to appreciate it, those in charge of the train have the right to presume in the first place that such person will keep out of danger and not until they have good reason to believe he will not do so are they required to use all proper means at their command to prevent injuring him. Sites v. Knott, 197 Mo. 712. (12) Expert evidence at best is only advisory and juries are entitled to exercise their own judgment in passing upon the things concerning which an opinion is given, and take or leave it, according it only such consideration and weight as seems reasonable to them, and they should be so instructed. Hayberg v. Henske, 153 Mo. 745; MacDonald v. Railroad, 219 Mo. 481. (13) A witness cannot be impeached or contradicted by an alleged former statement except it be a statement of fact and not merely an expression of opinion or legal conclusion as to the matter in issue. Reynolds v. Kingon, 222 S. W. 480; Hamburger v. Rinkel, 164 Mo. 407; Pitts v. Weakley, 155 Mo. 109. When it is sought to impeach a witness, even though that witness be a party to the cause on trial, such witness may be sustained by showing prior statements consistent with such witness's testimony. Alkier Grocer Co. v. Tagart, 78 Mo. App. 166; State v. Grant, 78 Mo. 133; Kelley v. Ins. Co., 192 Mo. App. 23. (14) A palpably false impression received by a witness, false for the reason it is contrary to the daily experience of common life and at war with the conceded and indisputable physical facts

in the case will be rejected as evidence by a court in passing upon the issues in such case. Mathews v. Railroad, 156 Mo. App. 721; Wagoner v. Railroad, 152 Mo. App. 173. Where creditable witnesses, have opportunity for observation, testify that a fact exists, no conflict arises from the expression of an opinion to the contrary by another witness when it affirmatively appears that his situation was not such as he could have observed and formed an opinion concerning the fact about which he attempts to express an opinion, and the same is a mere guess. Osborn v. Railroad, 179 Mo. App. 263. If the testimony of a witness contains antagonistic and irreconcilable statements of fact in which one class tends to support plaintiff's contention and the other to disprove it, such conflicting testimony should be eliminated from the consideration of the court or jury, and in such circumstances the case should be disposed of as though such witness had not spoken, and a verdict based on such testimony, alone, will not be permitted to stand. Oglesby v. Railroad, 177 Mo. 296; VanBibber v. Swift & Co., 286 Mo. 337.; State v. Johnson, 225 S. W. 963; Speaks v. Railroad, 179 Mo. App. 321; Brosius v. L. & Z. Co., 149 Mo. App. 187; Wagoner v. Railroad, 152 Mo. App. 173. If the evidence on behalf of a plaintiff, taken alone, tends to establish facts sufficient to make out his case, yet when considered with the whole evidence, it is so completely neutralized, destroyed or rendered inoperative that reasonable persons could come to but one conclusion as to its effect, in such a case a demurrer would properly be interposed and should be sustained. Brosius v. L. & Z. Co., supra; Torpey v. Railroad, 64 Mo. App. 387. (15)   In Mills v. Powers, 102 N. E. 912, the plaintiff was riding on the tailboard of a wagon and jumped off, turning as he did, so as to face the way the wagon was going, and without looking behind started diagonally across the street when he was struck by an automobile coming from behind. It was held that he was guilty of contributory negligence. To the same effect are the following authorities: Willis v. Harby, 144

N. Y. Supp. 154; Becker v. Fargo, 144 N. Y. Supp. 297; O'Reilly v. Davis, 20 N. Y. Supp. 883; McCormick v. Hesser, 71 Atl. 25; Daugherty v. Met. Motor Car Co., 147 Pac. 655.

BRADLEY, J.—Plaintiff sued to recover for the death of her husband, who was struck and killed by an automobile driven by defendant Grace B. Skinner. The jury returned a verdict in favor of defendants, upon which verdict judgment went accordingly. Plaintiff moved for a new trial and failing therein appealed.

When using the word defendant we have reference to defendant Grace B. Skinner, unless otherwise stated. Plaintiff charged negligence as follows: (1) That the defendant was not driving her automobile in a careful and prudent manner, and was not driving at a rate of speed so as not to endanger the property of another or the life or limb of persons who might be upon the public highway, but carelessly and negligently failed to have her automobile under control, and carelessly and negligently brought said automobile into collision · with plaintiff's husband; (2) that it was the duty of defendant to keep a careful and watchful lookout for persons who might be upon the public highway, and to have her automobile under control so as to be able to stop the same and avoid striking or injuring persons who might be upon the public highway, and to slow down and give an audible signal · when approaching a pedestrian on a public crossing, but that defendant wholly neglecting said duty carelessly and negligently failed to have her automobile under control, and carelessly and negligently failed to give an audible signal, and carelessly and negligently operated and propelled the same against plaintiff's husband; (3) the allegation of facts charging negligence under the humanitarian doctrine. Defendants answered separately by general denial, and a plea of contributory negligence.

Defendant on July 3, 1918, was driving a seven passenger Hudson south on Boonville street in the city

of Springfield when she ran against and over plaintiff's husband. Deceased, an employee of the Springfield Traction Company, was on his way to the car barns to go on duty when he was struck about 5:30 P. M. Boonville street runs north and south, and is intersected by Park street near where deceased was struck. The car barns are located on Boonville and Park streets; west of Boonville and south of Park. Double street car tracks are laid in Boonville, the west track being used for southbound cars. Two switches lead from the west track on Boonville at Park street and converge into a single track on Park leading to the car barns. Deceased, as stated, was on his way to work, and was riding on a southbound street car. On account of the switches leading off at Park street, the street cars at that point slow down to three or four miles. City ordinances require street cars to stop on the near side of streets to take on or discharge passengers, but the street car upon which deceased was riding on the occasion in question had no occasion to stop at Park street, but slowed down to four or five miles per hour in crossing Park street. Deceased stepped from the moving street car at a point somewhere between the south side of Park street and a hitching post about twenty-eight feet south of the south side of Park street, and had taken two or three steps west when he was struck, run over and fatally injured. Defendant had been driving behind this street car for three blocks, and the speed at which she was moving when deceased stepped from the street car was estimated at from four to eight miles per hour. The distance defendant was from deceased when he stepped from the street car was given at from four to thirty feet. There was some evidence to the effect that deceased was run over at a point about twenty-five feet south of where he was first struck.

Plaintiff complains of the giving, modifying and refusing of instructions. Plaintiff requested the following instruction:

"(1)   The court instructs the jury that if you find and believe from the evidence that the plaintiff, Rosa Uetz, is the widow of Ira A. Uetz, deceased, and that she brought her action against the defendants herein within six months after his death; and if you further find and believe from the evidence that on or about the 4th day of July, 1918, the defendant, Grace B. Skinner, was driving an automobile along and upon Boonville Street in the City of Springfield and at a point north of the intersection of Park Street was following a street car carrying passengers and being propelled along the tracks laid in said street; *then it was the duty of said Grace B. Skinner to drive said automobile in a careful and prudent manner so as not to endanger the life or limb of any person, and to keep a watchful lookout for pedestrians upon the street and upon approaching a pedestrian then being upon the traveled part of the highway and not upon the sidewalk, to slow down and give an audible signal with the automobile horn, and upon approaching said street intersection to slow down to such speed that the said automobile could be readily stopped;* and if you further find and believe from the evidence that on or about said date the said Ira A. Uetz alighted from said moving street car on Boonville Street after the same had crossed to the south side of Park Street, intending to pass over the street pavement to the sidewalk on the south side of Park street and thence to his work at the street car barns, and that in so doing he stepped on to that part of the street used by vehicles and thus placed himself in a position of peril with reference to said approaching automobile, and that there was a clear and unobstructed view between said automobile and said Ira A. Uetz after he had so alighted from said street car, and that said defendant saw, or by the exercise of reasonable care, watchfulness, and prudence on her part, might have seen the perilous position of plaintiff's said husband in time to have checked the speed of said automobile by using the means at her command, and thereby have avoided coming in con-

tact with the said Ira A. Uetz, but failed *to keep such watchful lookout or use such care and prudence or sound such automobile horn or slow down to such speed as that said automobile could be readily stopped or failed* to use such care or failed to use the means at her command for stopping said automobile, and that the plaintiff's said husband was struck and killed by said automobile in consequence thereof. (Italics ours.)

Or, if you find and believe from the evidence that the said automobile while being so driven by said defendant, was brought into contact with plaintiff's said husband while in the public highway as aforesaid, and that afterwards the said defendant, by the exercise of reasonable care and prudence on her part and by the use of the means at her command, might have stopped her said automobile and thus have avoided running over and killing said Ira A. Uetz, then your verdict will be for the plaintiff, notwithstanding said Ira A. Uetz was himself guilty of contributory negligence. By reasonable care, as used in these instructions, is meant such care as a reasonably prudent person would use under like or similar circumstances. You are further instructed that Ira A. Uetz, being dead, it is to be presumed, in the absence of evidence to the contrary, that he was not aware of the approach of the automobile that killed him. If you find a verdict for plaintiff you will allow her not less than $2000 as a penalty, and such sum in addition thereto, by way of compensation, as you find and believe from the evidence she has suffered in the premises, as pecuniary loss resulting from the death of her husband, such additional sum, if any, not to exceed $5500, and your verdict, if for plaintiff, must include penalty and compensation, if any, in one lump sum.''

The court refused this instruction as requested, but gave one like it, except the italicised portions, and the words ''such care or failed to use'' were added.

When deceased stepped from the street car he continued west towards the sidewalk, and was struck before he had taken but two or three steps. The space

between the west rail of the west street car track and the curb is 16.3 feet. Defendant was driving about midway of this space or perhaps nearer the curb than the west rail. It cannot be definitely stated what part of the automobile first struck deceased. Defendant says that it was the left front fender, but it is practically agreed that it was the right front wheel that passed over deceased. The automobile stopped immediately after the right front wheel passed over deceased, and he was taken from between the right front and right rear wheels. Deceased evidently was not aware of the presence of the automobile. There was evidence that he stepped off with his back somewhat to the automobile. The court instructed that in the absence of evidence to the contrary deceased was presumed to have been unaware of the presence of the automobile, and there was no evidence to the contrary. But, viewing the evidence in the most favorable light, the conclusion is inevitable that deceased stepped off the moving street car when the automobile was in plain view and only a few feet away, and would have been seen had he looked. In failing to look he was guilty of negligence as a matter of law, which precluded plaintiff from recovery on her charge of common law and statutory negligence. There were several standing on the rear platform of the street car, and deceased walked by these men and swung off, and had taken not exceeding three steps when he was struck by an automobile moving not over eight miles per hour according to the highest estimate, and at a much less rate according to some of the witnesses. Defendant was not required to anticipate that some one would alight from the moving street car. Failing to sound the horn at the intersection of Park street, or failing to keep a lookout, or any other alleged act of negligence, except under the last chance theory, go out of the case, because of the negligence of the deceased. Such was the theory on which the trial court proceeded when it refused to give plaintiff's instruction as requested.

What we have said concerning deceased's contributory negligence disposes of plaintiff's assignments based on instructions 2 and 4 given for defendant. Instruction number 4 pertained to the expert evidence, and we think was proper. Instructions 6, 8, 9 and 10 are challenged by plaintiff. Complaint is made because of the use of the language "then in his view" in instruction number 6. It is contended that by the use of these words the instruction conflicted with plaintiff's instruction number 1, because it assumes that deceased *saw* the automobile. This instruction might have properly omitted the complained-of words, but we do not think that plaintiff was in anywise prejudiced. The jury was plainly instructed on the last clear chance theory that the negligence of deceased would not defeat recovery. Whether he saw or did not see the approaching automobile was not an issue under the theory on which the cause went to the jury, and this was the only theory under the facts on which the cause could be submitted. Instruction number 8 is challenged on the ground that it confines plaintiff's right of recovery to the first phase of the last clear chance theory as set for in her instruction. It is also contended that this instruction ignores plaintiff's evidence relative to the failure of defendant to give a warning signal, and that the instruction placed a greater burden on plaintiff that is required. We have already disposed of the warning signal question. We do not consider the instruction susceptible of the construction that plaintiff puts upon it. It does not confine plaintiff to the first phase of the last clear chance theory as set forth in her instruction. We do not think it necessary to enter upon a discussion of the many criticisms that are made concerning the challenged instructions. When all the instructions are considered together we are of the opinion that the issues were fairly submitted, and especially is this true when it appears that the evidence is almost conclusive that it was utterly impossible for defendant to have stopped her automobile in time to

have averted the injury after deceased stepped from the street car.

Plaintiff complains because of the refusal of instructions A, C and D requested by her. Instruction C pertained to the evidence of the expert witnesses. We have ruled that instruction number 4 given for defendants on this subject was proper. It covered all that was necessary, and plaintiff has no ground for complaint in this respect. Instruction D told the jury that if they found that deceased after he alighted from the street car was on the part of the street commonly used as a street crossing by pedestrians then he was in a place where he had a right to be. This instruction ignored the conditions obtaining when deceased alighted from the street car. We have already ruled that the act of deceased in stepping from the street car under the conditions existing at the time was negligence as a matter of law. Instruction D was properly refused.

Instruction A is as follows: "By a preponderance of the evidence is meant that greater and superior weight of the evidence which satisfies you. Preponderance is not alone determined by the number of witnesses testifying to a particular fact or state of facts. It may be correct that the statement or superior knowledge of the subject-matter testified to, of one or a few witnesses, may be of more importance and be relied upon with a greater degree of assurance than that of a greater number, and the testimony of the witnesses is often strengthened or weakened by other facts and circumstances disclosed by the evidence." The court instructed, at the request of defendant, in instruction number 8 that the burden was on plaintiff to establish her case "by the preponderance or greater weight of the evidence." Preponderance or greater weight was not defined in any other instruction, and plaintiff contends that it was error to refuse instruction A. After setting forth a fair definition of the term "preponderance," the instruction proceeds to argument and illustration. "Preponderance of the evidence" is defined in Cartlich v. Met. St. Ry. Co., 129 Mo.

App. 721, 108 S. W. 584. It was said in Tucker v. Carter, — Mo. App. —, 211 S. W. 138, that the words "preponderance" and "preponderate" used in instructions are well known to jurors and need no definition. It was further remarked in that case, however, that if these words had needed explanation that the party complaining could have asked an instruction defining them. Had plaintiff asked an instruction properly defining "preponderance of the evidence" without argument and illustration it should have been given, but no such instruction was asked. Instruction A was properly refused.

Plaintiff's case was submitted to a jury under fair instructions when all the instructions are considered together, and the jury found against her. There is no error appearing in the record that would justify us in disturbing the result. The judgment should be affirmed and it is so ordered. *Cox, P. J.,* and *Farrington, J.,* concur.